UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA

v.                                                       Case No. 3:19-CR-71 JD

JOSHUA ERIC WILLIAMS

## OPINION AND ORDER

Defendant Joshua Eric Williams pled guilty to one-count of possessing a firearm as a

felon, in violation of 18 U.S.C. § 922(g)(1), and on June 25, 2020, was sentenced to a 50-month

term of imprisonment. [DE 22; 37]. He is currently serving his sentence at Leavenworth USP

with a release date of March 29, 2023. On April 26, 2021, Mr. Williams filed a motion with the

court seeking compassionate release or a sentence reduction pursuant to 18 U.S.C. §

3582(c)(1)(A) due to the threat of the COVID-19 virus. [DE 43]. The Court referred his motion

to the Federal Community Defenders Office, which determined that it is unable to assist Mr.

Williams. [DE 44; 56]. Therefore, the Court will consider Mr. Williams' own submissions. The

government filed medical records and a response, as well as a supplemental response, in

opposition arguing that Mr. Williams has not presented extraordinary and compelling reasons

warranting compassionate release, and the § 3553(a) factors do not favor release. [DE 51;61].

Mr. Williams filed a reply to the government's response. [DE 62].

A court generally cannot modify a sentence once the sentence has been imposed. 18

U.S.C. § 3582(c). However, an exception to that general rule allows a court to modify a sentence,

after considering the factors under § 3553(a), if "extraordinary and compelling reasons warrant

such a reduction," the reduction is consistent with policy statements issued by the Sentencing

Commissions, and the defendant has submitted such a request to the warden at least 30 days

before filing a motion or has fully exhausted all administrative rights within the Bureau of

Prisons. 18 U.S.C. § 3582(c)(1)(A). The application notes to the Sentencing Guidelines offer

some examples of when extraordinary and compelling reasons may be present. Those include

when the defendant is suffering from a terminal illness or is suffering from a serious physical or

medical condition that substantially diminishes his ability to provide self-care within the prison.

U.S.S.G. § 1B1.13 n.1. *See United States v. Gunn*, 980 F.3d 1178, 1181 (7th Cir. 2020) (finding

the substantive aspects of U.S.S.G. § 1B1.13 and its Application Notes provide a "working

definition" of "extraordinary and compelling reasons" that can guide a court's discretion

"without being conclusive"). Because Mr. Williams submitted a request to the Warden at least 30

days before filing his motion with the Court, pursuant to § 3582(c)(1)(A), which the Warden

denied and Mr. Williams' appeal of that decision was also denied, the Court reviews the merits

of the motion. [DE 43-1 at 7, 10].

First, the Court does not find that extraordinary and compelling reasons warrant

compassionate release or a reduction in sentence here. In the context of the COVID-19

pandemic, "§ 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on

the individuals' particular circumstances of where he is housed and his personal health

conditions." *United States v. Council*, 2020 WL 3097461, at *5 (N.D. Ind. June 11, 2020); *see

also United States v. Melgarejo*, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020). In

determining whether there is an extraordinary and compelling reason to modify a term of

imprisonment, the Court may consider (1) the specificity of the defendant's COVID-19 concerns,

(2) whether the defendant has a medical condition that makes him especially susceptible to the

dangers of COVID-19, (3) the age of the defendant, and (4) the extent that the defendant's

release would mitigate or aggravate the COVID-19 pandemic. *See Council*, 2020 WL 3097461,

at \*5–7; *United States v. Barrett*, 2020 WL 3264112, at \*3 (N.D. Ind. June 17, 2020); *see also United States v. Davis*, 2020 WL 1951652, at \*1–2 (N.D. Ind. Apr. 23, 2020) (applying similar factors to consider whether there was a "compelling reason" for pretrial release due to the COVID-19 pandemic).

As support for his motion, Mr. Williams asserts that he has been diagnosed with acute bronchitis and asthma for which he has been given an Albuterol inhaler for daily use. [DE 43 at 1–2]. His motion states that he has been hospitalized three times in the past five years due to these conditions and was given emergency attention, breathing treatment, Albuterol, and steroids. Further, he indicates he previously contracted the COVID-19 virus and continues to suffer from symptoms months later such as breathing problems and an ongoing cough. *Id.* at 2. Mr. Williams also states he got a bacterial infection which impacts his colon. Mr. Williams is 38 years old. The Centers for Disease Control ("CDC") reports that the risk of severe illness from COVID-19 increases with age, and that while the greatest risk of severe illness is among those aged 85 or older, adults aged 65 and older have increased risk.[1] Mr. Williams is far from this age range. The CDC has also indicated that adults at any age with moderate to severe asthma "can be more likely to get severely ill" from COVID-19.[2] Although he bears the burden of proving his claims, Mr. Williams has not provided any medical records supporting his assertions. The medical records submitted by the government indicate that Mr. Williams' asthma condition appears well-controlled at this time with medication provided by his facility and the records note

---

[1] *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html, (last updated Aug. 20, 2021).

[2] *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html, (last updated Aug. 20, 2021)

he is "stable on inhaler." [DE 51-3 at 5–6, 46]. He is prescribed an Albuterol inhaler to be used

as needed. *Id.* In November 2020, Mr. Williams had a chest x-ray, and the final report of that

exam indicated the findings were unmarkable, age appropriate, normal, and clear. *Id*. at 41. The

impression by the radiologist was "[n]o radiographic evidence for an acute cardiopulmonary

process." *Id.* Mr. Williams' records do not confirm his assertion that he has had bronchitis

several times in the last five years or that he has received emergent care due those illnesses. Mr.

Williams' medical records indicate that in February 2021, Mr. Williams tested positive for

COVID-19. His symptoms were a cough on two of the days, a headache on one of the days, and

otherwise a denial of any other symptoms on the remaining days he was infected. [DE 51-4 at

29–31]. Mr. Williams argues that he still has lingering health effects of COVID-19. [3]  On April

22, 2021, Mr. Williams presented to health services with a cough and shortness of breath and

stated he thought he had bronchitis. *Id.* at 5. The exam notes indicate he was not in respiratory

distress, he was able to converse in full sentences without pauses for breath, and he had a

sporadic cough but had no uncontrollable coughing spree. *Id.* at 6. Mr. Williams was scheduled

for a chest x-ray at the end of April 2021 after he complained of an ongoing cough since

contracting COVID-19. *Id.* at 55. The results of that x-ray have not been submitted to the Court.

However, Mr. Williams has not demonstrated that his post-COVID-19 symptoms are

extraordinary or compelling circumstances, nor has he established that they substantially

diminish his ability to provide self-care within the prison. Further, the CDC reports that "[c]ases

of reinfection with COVID-19 have been reported, but remain rare."[4] There is no other

---

[3] "Although most people with COVID-19 get better within weeks of illness, some people experience post-COVID conditions. Post-COVID conditions are a wide range of new, returning, or ongoing health problems people can experience four or more weeks after first being infected with the virus that causes COVID-19." *Long-Term Effects*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects/index.html (last updated Sept. 16, 2021).
[4] *See Reinfection with COVID-19*, Centers for Disease Control and Prevention, (last updated Aug. 6, 2021, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html.

indication that Mr. Williams is at an increased risk of severe illness if reinfected with COVID-19, especially since as discussed below, Mr. Williams' has been fully vaccinated with the COVID-19 vaccine.

The BOP's records have Leavenworth USP currently reporting 1 inmate and 1 staff member testing positive for COVID-19.[5] Tragically, there have been three inmate deaths at the facility. Though Mr. Williams criticizes the way his facility has handled the virus, the BOP has implemented several precautions to help mitigate the spread. Of course, these precautions cannot guarantee that the number of positive inmates will not increase in the prison, and some prisons have experienced outbreaks despite those precautions, particularly as cases increased throughout the country. Over the course of the COVID-19 pandemic, there have been 729 inmates and 14 staff members who have tested positive for the virus at Leavenworth.[6] Fortunately, the number of current cases is very low, likely due to the BOP's vaccine distribution efforts.

The BOP has reported that it is in the process of distributing and administering the COVID-19 vaccine to staff and inmates under the guidance of the CDC. As of October 12, 2021, the BOP has administered 231,362 doses of the vaccine.[7] More specifically, as of October 12, Leavenworth has 1,342 inmates and 157 staff members fully inoculated.[8] This means nearly eighty-three percent of the inmate population at Leavenworth USP is fully vaccinated, greatly reducing the likelihood of another spike in COVID-19 cases in the facility.[9] Mr. Williams received his first dose of the Moderna COVID-19 vaccine on March 18, 2021 and his second dose on April 14, 2021. [DE 51-4 at 41]. According to the CDC, although vaccine breakthrough

---

[5] *See Covid-19 Coronavirus*, Federal Bureau of Prison, https://www.bop.gov/coronavirus/, (last updated Oct. 12, 2021).
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] Leavenworth USP currently houses 1,619 total inmates. *USP Leavenworth*, Federal Bureau of Prison, https://www.bop.gov/locations/institutions/lvn/, (last visited Oct. 12, 2021).

infections can occur, COVID-19 vaccines are effective at preventing most infections and if fully

vaccinated people do have a breakthrough infection, they are less likely to develop serious illness

than those who are unvaccinated, which means they are much less likely to be hospitalized or die

than people who are unvaccinated.[10]

        An overwhelming amount of district courts across the country have held that being fully

vaccinated drastically reduces the risk of becoming severely ill and therefore denied

compassionate release.  *See, e.g.*, *United States v. Pennington*, 2021 WL 1976803, at *2 (N.D.

Ind. May 18, 2021) ("By far the biggest reason compassionate release is not appropriate in this

case is that [the defendant] is vaccinated."); *United States v. Baeza-Vargas*, 2021 WL 1250349,

at *3 (D. Ariz. Apr. 5, 2021) (citing more than a dozen cases); *United States v. Singh*, 2021 WL

928740, at *3 (M.D. Penn. March 11, 2021) ("as a result of his vaccination, [the defendant] now

has significant protection against serious illness or death should he contract COVID-19 and,

accordingly, the Court concludes that [the defendant] has not demonstrated that his underlying

conditions—in combination with the possibility of a COVID-19 infection—provide

extraordinary and compelling reasons to grant his motion for compassionate release"). Recently,

the Seventh Circuit has also weighed in on this issue. In *United States v. Broadfield*, 5 F.4th 801,

---

[10]The Possibility of COVID-19 after Vaccination: Breakthrough Infections, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html, (last updated Sept. 7, 2021).

The United States is currently experiencing an increase of COVID-19 cases that have been identified as the Delta variant. The CDC has labeled this variant as a "variant of concern." *SARS-CoV-2 Variant Classifications and Definitions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/variants/variant-info.html#Concern, (last updated Oct. 4, 2021). A variant of concern is one which "there is evidence of an increase in transmissibility, more severe disease (e.g., increased hospitalizations or deaths), significant reduction in neutralization by antibodies generated during previous infection or vaccination, reduced effectiveness of treatments or vaccines, or diagnostic detection failures." *Id.* However, the CDC has stated the "COVID-19 vaccines approved or authorized in the United States are highly effective at preventing severe disease and death, including against the Delta variant. . . . For all people, the vaccine provides the best protection against serious illness and death." *Delta Variant: What We Know About the Science*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html, (last updated Aug. 26, 2021).

803 (7th Cir. 2021), the Court held that prisoners who have been vaccinated or who have been offered but declined a vaccine may not rely on the risk of contracting COVID-19 as an "extraordinary and compelling reason" justifying release. Thus, given all of these circumstances, the Court cannot find that extraordinary and compelling reasons warrant compassionate release or a sentence reduction. Section 3582(c) provides the only mechanism for modifying Mr. Williams' sentence since the Court cannot control the BOP's placement decisions, and because he is not entitled to relief under that provision, the Court cannot grant that request.

Second, even if the above facts qualified as extraordinary and compelling reasons, the Court would still deny the motion based on its consideration of the § 3553(a) factors. In support of his motion, Mr. Williams asserts that he has been participating in BOP's residential drug treatment program and has completed Phase I and was scheduled to graduate Phase II in September 2021. [DE 43 at 3]. He indicates that he has a loving family, fiancé, and three sons and if released, has a job waiting for him. Mr. Williams is to be commended for all of these accomplishments and plans for the future, which reflect well on his desire to improve his life upon his release.

As positive as these factors are, however, there are several § 3553(a) factors that weigh against Mr. Williams' release. *See United States v. Ugbah*, 4 F.4th 595, 596 (7th Cir. 2021) (finding it is sufficient for a court to provide one reason adequate to support the denial of a motion under Section 3582(c)(1)). The nature and circumstances of his instant offense was serious. On July 31, 2019, South Bend police officers responded to the location of a suspected stolen car. Mr. Williams arrived at the location in another car and tried to jump start the allegedly stolen car, but as an officer walked up, he got back into the passenger seat of the car he arrived in. A few minutes after the officer told the driver of the car to turn off the car and instructed Mr.

Williams not to reach toward his pants, an officer arrested the driver in the vehicle with Mr. Williams. As the driver was being put in the police car, Mr. Williams got out of the car, pushed the officers, and tried to run away. After a few attempts to tackle and wrestle Mr. Williams to the ground, one of the officers used a taser on him. Mr. Williams continued to resist arrest and as he did, his pants fell, and a firearm fell out of his front pocket. After the gun fell, Mr. Williams yelled to a bystander to get the gun while he continued to struggle with the officers. After being tasered again, Mr. Williams stopped resisting and the officers finished arresting him and brought him to the police car. The firearm was loaded, and a round was chambered.

Mr. Williams has an extensive criminal history, which includes several past issues with firearms, as well as a history of violence, anger management concerns, and repeated non-compliance with law enforcement officers, including a felony conviction for battery of a police officer. Mr. Williams has a poor record of compliance with terms of supervision, including committing the instant offense while on parole for an attempted armed robbery conviction. Further, the government has noted Mr. Williams' record while incarcerated includes at least one disciplinary infraction for disruptive conduct. [DE 51-2]. In March 2021, Mr. Williams received a formal warning and treatment intervention for his recent behavior and for his inappropriateness with staff and his continued struggles with accepting facility program rules. [DE 51-4 at 60]. Under those circumstances, the Court does not find that the § 3553(a) factors support Mr. Williams' compassionate release or a reduction in sentence.

For those reasons, the Court DENIES Mr. Williams' motion for compassionate release or reduction in sentence. [DE 43].


SO ORDERED.

8

ENTERED: October 19, 2021

                                             /s/ JON E. DEGUILIO
                                     Chief Judge
                                     United States District Court